## ERIE TRANSFER CO. v. J. CUTLER IRON WORKS, Inc.
### No. 2738.

District Court, E. D. New York.
Oct. 11, 1929.

Order modified in 47 F.(2d) 1078.

Lewis, Marks & Kanter, of Brooklyn, N. Y., for Sidney F. Strongin, receiver.

Samuel Goldberg, of New York City (Leopold Blumberg, of New York City, of counsel), for petitioner, Land Finance Corporation.

Toney A. Hardy, of New York City (David Brady, of New York City, of counsel), for Central Mercantile Bank & Trust Co.

GALSTON, District Judge.

On May 9, 1928, an order was made in this suit referring to Jesse Fuller, Esq., as special master, "the issues raised by the application of the Land Finance Corporation and the affidavit of David H. Gladstone, attorney for the Central Mercantile Bank & Trust Company, petitioning creditor of Edmund Fain and Louis Klausner, alleged bankrupts * * * to take proof of the issues raised by the said petition and the affidavit of David H. Gladstone, as attorney for the Central Mercantile Bank & Trust Company, petitioning creditor of Edmund Fain and Louis Klausner, alleged bankrupts. * * *" The order further provided that the special master report upon the matters referred to in the order, and that upon the "coming in of the said Special Master's report, this matter be brought on for further hearing, and such further order and decree as to the Court shall seem just and proper."

The application of the Land Finance Corporation referred to was a petition of Leopold Blumberg, made as the president of the Land Finance Corporation, and recited that the petitioner, meaning apparently the Land Finance Corporation, was the holder, for which it had paid full value on the purchase thereof from the receiver herein, of a receiver's certificate in the sum of $5,000, issued on October 19, 1926, payable to bearer on April 1, 1927, or prior thereto at the option of the receiver. The petition also alleged that demand had been made of the receiver for the payment of the said certificate but that payment had been refused.

From the affidavit of David H. Gladstone, opposing the petition, it appears that the Central Mercantile Bank & Trust Company was a petitioning creditor in separate bankruptcy proceedings against Edmund Fain and Louis Klausner; that as such petitioning creditor in those bankruptcy proceedings the Central Mercantile Bank & Trust Company opposed the payment by the receiver herein to the Land Finance Corporation on the ground that the aforesaid receiver's certificate, though in the possession of the Land Finance Corporation, was in fact the property of Fain and Klausner.

In accordance with the order of reference, evidence was thereafter taken before Jesse Fuller, Esq., as special master. Before, however, the special master had prepared his report in accordance with the court order, he died. Thereupon, on the stipulation of the parties, the record of the testimony and exhibits taken was filed with the court and submitted to the court for adjudication and for such disposition as to the court might seem just and proper.

A review of the record indicates the following:

The petitioner offered Petitioner's Exhibit 1, the receiver's certificate in question, and then rested its case on that exhibit.

From intervener's proofs it appears that on October 8, 1926, the Land Finance Corporation issued its check in the sum of $5,000 to the joint order of Edmund Fain and Louis Klausner. The check was indorsed by Fain and Klausner in blank, and by Sidney F. Strongin, as equity receiver for the defendant herein, for deposit. At the time this check passed to the receiver there were present in the office of Leopold Blumberg, besides himself and the receiver, Fain Klausner, and Oscar J. Lewis, Esq., as counsel for the receiver. At this meeting, as Mr. Strongin testifies, Mr. Blumberg represented Fain and Klausner. Mr. Strongin further testified that he had not been carrying on any discussions "of any nature or description whatsoever with the Land Finance Company. I didn't know them. My transactions were directed towards two men, whom I recognized as the principal stockholders of the company in difficulties, upon whom I felt justified in leaning and working out its problems, and that is Fain and Klausner."

Mr. Lewis, testifying as to the same transaction, having been asked to whom he delivered the receiver's certificate, said:

"Well I can't say that I delivered it to any person in particular. We all along dealt with Fain and Klausner or with Blumberg, as attorney for Fain and Klausner."

Mr. Lewis produced the receipt which he obtained on the delivery of the receiver's certificate. This receipt (Intervener's Exhibit NN) was signed, "L. Blumberg, Attorney for Edmund Fain and Louis Klausner."

This version of the transaction was not uncontradicted and is sufficient to dispose effectually of the allegations of paragraph sixth of the petition, that the petitioner was the purchaser of the said certificate from the receiver.

At most, from the proofs taken, the petitioner can argue that it advanced the money as a loan to Fain and Klausner and that it is the holder of the certificate as collateral security for the loan to Fain and Klausner.

The petition, however, makes no such allegations. On the other hand, the intervener contends that while it appears that the petitioner's money passed via Fain and Klausner to the receiver, and though it may be assumed that the money was a loan to them, the petitioner has in fact been fully paid; and that therefore the receiver herein should be directed to pay the principal and interest of the certificate to the trustees in bankruptcy of Fain and Klausner. In support of this contention, however, the intervener is as far short of proof as is the petitioner, for there is no proof that Fain and Klausner or either of them repaid the petitioner. There is evidence, however, that the indebtedness of Fain and Klausner, if any, to the Land Finance Corporation was repaid by Drake Drinks, Inc., another corporation, in which Fain and Klausner were the principal stockholders.

Intervener's Exhibit H, an alleged agreement entered into between the Land Finance Corporation and Drake Drinks, Inc., and approved and accepted by Fain and Klausner as individuals, provided that any moneys advanced to Fain or Klausner personally or to the receiver of J. Cutler Iron Works, Inc., or to any other person at the request of Fain and Klausner or to Drake Drinks, Inc., was for the benefit of Drake Drinks, Inc., and was to be chargeable against Drake Drinks, Inc. The said alleged agreement likewise contained the following undertaking:

"2. Any evidence of indebtedness and/or collateral received in making any advances unto the Drake Drinks, Inc., and/or unto any other person or persons including the receiver of Cutler Iron Works, shall be immediately turned over unto the Land Finance Corporation and shall be the sole property of the Land Finance Corporation, and shall be liquidated and collected by the Land Finance Corporation and applied on account of any money due and to become due."

The intervener argues that the agreement is void on the ground that the Land Finance Corporation was not a banking corporation and had no power to conduct banking operations, and submits extracts from the certificate of incorporation of the Land Finance Corporation (Defendant's Exhibit OO) which would seem to indicate that the discount operations contemplated by the agreement was beyond the scope of its charter.

In my view of the case, however, it is not necessary to pass on the legality of this agreement between the Land Finance Corporation and Drake Drinks, Inc. Whether it was as a matter of fact executed and in force on the date appearing on its face is at least doubtful. The intervener introduced evidence which shows that the books of the Land Finance Corporation were kept in a rather haphazard irregular manner; and that books containing important entries were missing, and their absence not satisfactorily accounted for. However, I do not find intervener's proofs sufficiently strong to justify me in believing that the instrument of September 16, 1926, was not in existence on October 8, 1926. Blumberg testifies it was executed on September 16, 1926. On the contrary, it must be presumed that when the Land Finance Corporation issued its check for $5,000 to Fain and Klausner, it was either in payment of a debt then existing, and that is not contended by anybody, or was a loan to them. Therefore, it is reasonable to suppose that the lender, the Land Finance Corporation, acquired the receiver's certificate from Fain and Klausner either as collateral security for the loan or by virtue of the agreement of September 16, 1926. If the latter be the fact, then the petitioner must be viewed as presenting the certificate for payment with some measure of legal right, and it may have been contemplated by the parties at the time Exhibit H was executed.

But, says the intervener, assuming such to be the fact, all the advances made by the Land Finance Corporation as contemplated by the instrument of September 16, 1926, have been paid and there is nothing owing to the Land Finance Corporation.

The proof sustains that contention. Blumberg's bookkeeping operations are by no means convincing. In the absence of original books, copies of ledger sheets (Intervener's Exhibits E, F, and N) were rewritten by Blumberg. These sheets are by no means satisfactory and I am not persuaded of their accuracy. Certainly they are not in accord with the reconstructed sheet of intervener's expert accountant, the witness who prepared Intervener's Exhibit RR, transcribed from the daily balance book of the Land Finance Corporation and the books of Drake Drinks, Inc. This exhibit throws considerable doubt too on the accuracy of Intervener's Exhibit A, produced by Blumberg as a copy of another ledger sheet of the Land Finance Corporation. Under date of December 20, 1927, there is an entry of $5,000 which is not explained by Blumberg. Intervener's Exhibits F and N, which are offered by Blumberg as copies of original ledger sheets, contain an entry of $5,000 on that day, but as of February 23, 1927. That entry refers to a journal page 97.

The journal shows an entry of $5,000 paid to "L. B. Atty," which apparently was sought to be erased and over the erasure appears the entry, "Notes Payable Gen'l." Miss Israelite, the bookkeeper of the Land Finance Corporation, could offer no explanation for the erasure.

Moreover, if the entry of $5,000 on December 20, 1927, was properly chargeable to Drake Drinks, Inc., no record of it appears in the daily balance book. On the contrary, the daily balance book shows no substantial increase in the indebtedness of Drake Drinks, Inc., to the Land Finance Corporation from the time of its inception on December 3, 1926, until April 19, 1927, at which time there is an unexplained item of $10,071.22. This is not identified by any reference to the cash book or journal. The bookkeeper attempts to explain it by the statement that it must represent a total of items appearing in the cash book and journal, but would not include it or identify it in the daily balance book.

Blumberg sought to justify the entry of $5,000 on December 20, 1927, on the rewritten ledger sheet as a charge for attorney's fees. If this figure of $5,000 and the unexplained entry of $10,071.22 were subtracted from the sum of $49,000, which Blumberg claims to be due from Drake Drinks, Inc., to the Land Finance Corporation, then an indebtedness of $34,000 is reached, a sum which is in accord with the books of Drake Drinks, Inc. (Intervener's Exhibit RR.) Inasmuch as the Land Finance Corporation has received notes for more than $41,000 from Drake Drinks, Inc., which Blumberg admits have since been paid in full, there apparently is nothing owing to the Land Finance Corporation from Drake Drinks, Inc.

Thus from the foregoing it must appear that the petitioner fails to show either a direct purchase from the receiver of the $5,000 certificate in question, as its petition alleges, or even that it holds the certificate as collateral security to an unpaid indebtedness.

If the Land Finance Corporation has been fully paid, then assuming the agreement of September 16, 1926, to be binding on all parties, as the Land Finance Corporation contends, since it no longer holds the receiver's certificate "on account of any moneys due and to become due" (Intervener's Exhibit H, par. 2), it has no legal title to the receiver's certificate in question. It is sufficient, however, to dispose of the petition herein on the sole ground that the allegation made by the petitioner that it acquired the certificate by direct purchase from the receiver is not sustained.

■ In conclusion it may be stated that the petitioner seeks now to raise the question as to the status of the intervener in this suit. That question cannot properly be raised before me in view of the order heretofore entered permitting the Central Mercantile Bank & Trust Company to intervene. In Commercial Union of America v. Anglo-South American Bank, Ltd. (C. C. A.) 10 F.(2d) 937, 941, Judge Rogers wrote:

"Judges of co-ordinate jurisdiction, sitting in the same court and in the same case, should not overrule the decisions of each other."

If the petitioner felt aggrieved by the order referred to, its remedy was by way of appeal.

It is not for me to say in the present state of the proof to what other parties the receiver should make payment of the certificate in question. The receiver should set aside the principal and interest as a special fund until such other parties, by agreement or as the result of an independent action, are able to establish legal title and possession to the certificate in question. It is clear that the petitioner is not entitled to payment, and accordingly its motion for payment is denied. Settle order on notice.